IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Crim. No. 12-172 |
| | : | |
| TYRONE MITCHELL | : | |
| | : | |

**Diamond, J,**                                                                                           **October 7, 2015**

# M E M O R A N D U M

At the October 27, 2014 suppression hearing in this drug trafficking prosecution, Defendant Tyrone Mitchell testified, admitting his guilt but disputing facts relating to probable cause. (Doc. Nos. 94, 103.) I denied suppression on November 21, 2014; trial is set to begin on October 20, 2015. (Doc. Nos. 107, 149.) The Government moves to impeach Defendant with his suppression testimony should he contradict that testimony at trial. (Doc. No. 131.) Because such impeachment would not violate the Fifth Amendment, I will grant the Government's Motion.

    I.      **Procedural History**

On December 18, 2013, the grand jury returned a seventeen-count Second Superseding Indictment, charging Defendant with: (1) one count of conspiracy to distribute 500 grams or more of cocaine, 21 U.S.C. § 846; (2) one count of possession of 28 grams or more of cocaine base with intent to distribute, 21 U.S.C. § 841(a)(1), (b)(1)(B) and aiding and abetting, 18 U.S.C. § 2; (3) one count of possession of 100 grams or more of a mixture containing phencyclidine (PCP) with intent to distribute, 21 U.S.C. § 841(a)(1), (b)(1)(B) and aiding and abetting, 18 U.S.C. § 2; (4) one count of possession of 28 grams or more of cocaine base, 500 grams or more of cocaine, oxycodone, and marijuana with intent to distribute, 21 U.S.C. § 841(a)(1), (b)(1)(B)

and aiding and abetting, 18 U.S.C. § 2; (5) four counts of distribution of cocaine, 21 U.S.C. § 841(a)(1), (b)(1)(C); (6) three counts of maintaining a house for drug distribution, 21 U.S.C. § 856(a); (7) three counts of possession of a firearm in furtherance of a drug trafficking crime, 18 U.S.C. § 922(g)(1); and (8) three counts of possession of a firearm by a convicted felon, 18 U.S.C. § 924(c)(1). (Doc. No. 49.)

Defendant moved to suppress evidence police recovered during their search of 3248 Goodman Street—a row house Defendant owns—and a subsequent traffic stop of Defendant. (Doc. No. 37.) I held a suppression hearing on September 24, 2014, during which the Government called various police witnesses who testified to numerous controlled narcotics purchases involving Defendant, their subsequent surveillance of the Goodman Street residence, the search warrant they obtained for the residence, their execution of the warrant, and the subsequent traffic stop of Defendant. (Tr. 9/24/14 at 28-31, 34-35, 46-50, 55-66, 75-102, 109-14, 126-30, 146, 154-55.)

The hearing resumed on October 27, when I heard the testimony of an FBI Agent and Defendant himself. (Doc. No. 103, Tr. 10/27/14 at 5-12, 45-81.) Defendant made a number of inculpatory admissions. For instance, he testified that he had "committed a crime" minutes before police stopped his car. (Tr. 10/27/14 at 46:8-17, 47:13.) Defendant explained that he had just "sold some drugs"—which he subsequently described as sixty-three grams of cocaine—in exchange for $2,100, which police recovered (along with an additional $1,900). (Id. at 48:1-17, 68:1-12.) Defendant disputed police testimony relating to the legality of the traffic stop and the residence search. (Id. at 49-67.)

On November 21, 2014, I denied suppression, partly discrediting Defendant's testimony. (Doc. No. 107 at 1-2.) On January 23, 2014, Defendant, who is represented by retained counsel,

filed a *pro se* request for reconsideration, which I denied. (Doc. Nos. 136, 137.) With trial approaching, the Government has filed a Motion *in Limine* to impeach Defendant with his suppression testimony should he offer contradictory testimony at trial. (Doc. No. 131.) After Defendant failed to respond to the Government's Motion, I ordered him to do so. (Doc. No. 158.) Defendant has not yet responded.

## II.     Discussion

The Government concedes that Defendant's suppression testimony is not admissible "at trial on the question of guilt or innocence." Simmons v. United States, 390 U.S. 377, 390 (1968). The Simmons Court recognized the potential at suppression for tension between the Fourth and Fifth Amendments: a defendant may be compelled to sacrifice his self-incrimination privilege to protect his Fourth Amendment rights, or surrender a valid Fourth Amendment claim to preserve the privilege. Id. Finding "intolerable that one constitutional right should have to be surrendered in order to assert another," the Court barred the substantive use at trial of a defendant's suppression testimony. Id. Although it has not overruled Simmons, the Supreme Court has questioned its reasoning. McGautha v. California, 402 U.S. 183, 212 (1971) reh'g granted, judgment vacated on other grounds sub nom. Crampton v. Ohio, 408 U.S. 941 (1972) ("While we have no occasion to question the soundness of the result in *Simmons* and do not do so, to the extent that its rationale was based on a 'tension' between constitutional rights and the policies behind them, the validity of that reasoning must now be regarded as open to question . . . ."); see In re Fed. Grand Jury Proceedings (FGJ 91-9), Cohen, 975 F.2d 1488, 1492 (11th Cir. 1992) ("*Simmons*, although never explicitly overruled . . . , has been considerably narrowed and its reasoning questioned.").

Simmons left open the question of whether the Government may, consistent with the Fifth Amendment, use a defendant's suppression hearing testimony to impeach him at trial. United States v. Salvucci, 448 U.S. 83, 93-94 (1980) ("This Court has not decided whether *Simmons* precludes the use of a defendant's testimony at a suppression hearing to impeach his testimony at trial."). Although the Third Circuit has not yet addressed this issue, every Circuit to do so has allowed impeachment use of a defendant's suppression hearing testimony. See, e.g., United States v. Geraldo, 271 F.3d 1112, 1116 (D.C. Cir. 2001) ("If [Defendant] had testified at the suppression hearing . . . , his testimony could have been used to impeach him at trial if he took the stand."); United States v. Jaswal, 47 F.3d 539, 543 (2d Cir. 1995) ("Prior inconsistent suppression hearing testimony may properly be used to impeach a defendant during trial."); United States v. Beltran-Gutierrez, 19 F.3d 1287, 1291 (9th Cir. 1994) ("[Defendant] elected to testify in his own defense at his trial. The Fifth Amendment protected him from the use of his suppression hearing testimony in the Government's case in chief to prove his guilt. It did not protect him from impeachment for testifying falsely."); United States v. Quesada-Rosadal, 685 F.2d 1281, 1283 (11th Cir. 1982) ("[T]he use of prior inconsistent statements given at a suppression hearing can be used to impeach a defendant's trial testimony."); see Reinert v. Larkins, 379 F.3d 76, 96 n.5 (3d Cir. 2004) (noting that various courts have held "that such testimony is admissible as evidence of impeachment"); see also United States v. Dohm, 618 F.2d 1169, 1174 (5th Cir. 1980) (en banc).

The rationale underlying these decisions is compelling. A defendant whose suppression and trial testimony are at odds lied in one proceeding or the other. Prohibiting the defendant's impeachment with his inconsistent testimony would allow him to lie with impunity. See, e.g., Beltran-Gutierrez, 19 F.3d at 1290-91; Quesada-Rosadal, 685 F.2d at 1283. This would certainly

run counter to the Supreme Court's statement that the self-incrimination privilege is not a privilege to commit perjury. See, e.g., Brogan v. United States, 522 U.S. 398, 404 (1998) ("[N]either the text nor the spirit of the Fifth Amendment confers a privilege to lie."); United States v. Apfelbaum, 445 U.S. 115, 126 (1980) ("[T]he Fifth Amendment privilege against compulsory self-incrimination allows a witness to remain silent, but not to swear falsely."); Glickstein v. United States, 222 U.S. 139, 142 (1911) (stating that the Fifth Amendment "does not endow the person who testifies with a license to commit perjury").

In closely analogous cases, Courts have repeatedly held that the Fifth Amendment allows a defendant's impeachment with his own statement or prior testimony even though that evidence was not admissible substantively. For instance, the Supreme Court has held that a defendant's statement obtained in violation of Miranda, although inadmissible as substantive evidence, may be used to impeach the defendant at trial. See Harris v. New York, 401 U.S. 222, 225-26 (1971) ("The shield provided by *Miranda* cannot be perverted into a license to use perjury by way of a defense, free from the risk of confrontation with prior inconsistent utterances."). The Court acknowledged that "[e]very criminal defendant is privileged to testify in his own defense, or to refuse to do so." Id. at 225. Once a defendant chooses to testify, however, the oath requires truthful testimony, which can be challenged by "the traditional truth-testing devices of the adversary process." Id.

The Supreme Court has also deemed presumptively enforceable a "proffer" waiver—i.e., an agreement by which prosecutors "condition cooperation discussions on an agreement that the [statement] may be used for impeachment purposes." United States v. Mezzanatto, 513 U.S. 196, 204-06 (1995) (referring to "the background presumption of waivability"); see also United

5

States v. Hardwick, 544 F.3d 565, 570 (3d Cir. 2008) (upholding the enforceability of proffer waivers at trial).

Courts have barred the impeachment use of a defendant's prior testimony or statement only with respect to compelled grand jury testimony. New Jersey v. Portash, 440 U.S. 450, 459-60 (1979) (a defendant's judicially compelled and immunized grand jury testimony could not, consistent with the Fifth Amendment, be used against him at trial); see United States v. Pantone, 634 F.2d 716, 722 (3d Cir. 1980). Portash does not apply here because Defendant was not compelled to testify at suppression; he chose to do so. See Beltran-Gutierrez, 19 F.3d at 1290.

Courts have not limited the impeachment use of otherwise inadmissible evidence to a defendant's prior statement or testimony. In Walder v. United States, the Supreme Court held that physical evidence obtained in violation of the Fourth Amendment may be used to impeach the defendant at trial. 347 U.S. 62, 65 (1954). The Court explained that it would "be a perversion of the Fourth Amendment" to allow a defendant to "turn the illegal method by which evidence in the Government's possession was obtained to his own advantage, and provide himself with a shield against contradiction of his untruths." Id.; United States v. Havens, 446 U.S. 620, 621, 626-27 (1980) (extending Walder to permit suppressed evidence to be used for impeachment testimony); see also Michigan v. Harvey, 494 U.S. 344, 361 (1990) ("The Court has held that evidence seized in violation of the Fourth Amendment is excluded from a criminal trial not as a personal right of the criminal defendant but rather as a remedy for a wrong that is fully accomplished at the time the evidence is obtained.").

In sum, Courts have uniformly held that, except in limited circumstances (not present here), evidence excluded on constitutional grounds from the Government's case-in-chief may be

used to impeach a defendant. The reasoning underlying those decisions compels the same result here.

### III.     Conclusion

If Defendant chooses to testify at trial, and in doing so he contradicts his suppression hearing testimony, the Government may impeach Defendant with his suppression testimony.

An appropriate Order follows.

*/s/ Paul S. Diamond*
_____

October 7, 2015                                                              Paul S. Diamond, J.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | Crim. No. 12-172 |
| : | |
| TYRONE MITCHELL : | |
| : | |

# O R D E R

**AND NOW**, this 7th day of October, 2015, it is hereby **ORDERED** that the Government's Motion *in Limine* to Admit Defendant's Suppression Hearing Testimony at Trial Under Certain Circumstances (Doc. No. 131) is **GRANTED**. The Government may impeach Defendant with his suppression testimony if Defendant testifies at trial and contradicts his suppression testimony.

**AND IT IS SO ORDERED.**

*/s/ Paul S. Diamond*
_____
Paul S. Diamond, J.